# K. K. JONES

*v.*

# H. A. ALBEE.

1. PLEADING—*when fraud is set up, the facts constituting it must be stated.* A plea setting up fraud in procuring the execution of a guaranty, must set out the facts constituting the fraud. A general allegation that the defendant was induced to execute the contract by means of fraud, covin and misrepresentation of the plaintiff, and others in collusion with him, is bad on demurrer.

2. PAROL EVIDENCE—*varying written contract by parol.* In a suit upon a written guaranty of the payment of a note, a plea which sets up a parol contract made at the same time, limiting the liability of the indorser or guarantor, can not be sustained upon any principle of law.

3. SAME—*to change liability of indorser of note.* In an action by an indorsee of a promissory note against the indorser, it may be shown by parol that the indorsee held as agent for the indorser, or in trust, or for collection merely, or that the same was sold without recourse, and that the indorsement was afterwards made merely to transfer the legal title. These cases are exceptions to the general rule.

4. JUDICIARY—*of Cook county—each judge may hold court alone.* The intention of the constitution of 1870 is, to give the several judges of the

circuit and Superior courts of Cook county identically the same powers, and place them on the same footing of circuit courts, but composed of branches corresponding with the number of judges, each judge, while holding such branch, to have all the powers of a circuit court. It does not require a majority of the judges of either of said courts to sit together, but each may hold court by himself.

5. PLACITA—*should show the judge holding the court.* The *placita* of the record, in a case coming from the courts of Cook county, should show that the court was held by one judge only, and he should be the one before whom the cause was tried, and he should sign the bill of exceptions in actions at law, and sign decrees, and certify the evidence in suits in equity.

6. CONSTITUTIONAL LAW—*whether judge may hold court out of his circuit.* While the constitution requires each circuit judge to reside in the circuit in which he is elected, yet he is not, in terms or by implication, prohibited from holding court in another circuit, in such manner as may be prescribed by law.

7. A circuit judge from a different circuit may properly preside as a judge in the Superior Court of Cook county, when requested, under the provisions of the act of May 3, 1873, and the proceedings before him will not be invalid on that account.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. JOSIAH McROBERTS, Judge, presiding.

Mr. W. J. DURHAM, for the plaintiff in error.

Messrs. WALKER, DEXTER & SMITH, for the defendant in error.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an action of assumpsit, brought in the Superior Court of Cook county, by H. A. Albee against K. K. Jones.

At the July term, 1873, the cause was tried before a jury, and verdict rendered in favor of the plaintiff for $2984.96. The defendant brings the case to this court by writ of error, and asks a reversal of the judgment.

The record shows this suit was brought on a written guaranty upon a promissory note, which read as follows:

*"September 27th,* 1870.

"One year after date, for value received, I promise to pay to H. A. Albee two thousand three hundred and twenty-six dollars and thirty-one cents, with interest at ten per cent per annum.　　　　　　　　　　　M. A. CUSHING."

Indorsed, "For value received I hereby guaranty the payment of the within note at maturity.　　　K. K. JONES."

The first point relied on by the defendant, in his argument, is, the court erred in sustaining a general demurrer to an additional plea, and fourth plea by him filed to plaintiff's declaration. The only material allegation in the additional plea is this: "Defendant avers that the plaintiff caused and procured the defendant to enter into the said agreement, and indorse the said note, and promise as in the said declaration alleged, and the defendant was induced to enter into and make the said agreement and promise, and indorse said note, through and by means of the fraud, covin and misrepresentation of the plaintiff, and others in collusion with him."

This plea can not be sustained by any well settled authority on pleading. If the defendant desired to rely on fraud, the facts constituting the fraud should have been set out in the plea. This we understand to be a well settled rule of pleading. *Slack* v. *McLagan,* 15 Ill. 249.

The substance of the fourth plea is, that the defendant bought a manufacturing business and patent right of the plaintiff. The price to be paid was what they had cost the plaintiff, and that the plaintiff falsely said they cost $7326.31, which the defendant paid, in cash, $5000, and the balance by indorsing the note sued upon; that the plaintiff agreed, by parol, at the time the note was indorsed, not to hold the defendant on the indorsement for more than such actual cost, while in truth and in fact the cost of the manufacturing business and patent right was but $3300.

We are aware of no principle of law upon which this plea can be sustained. The indorsement of this note was a written contract. The pleader sets up a parol contract made at the

same time, by which he seeks to change the liability of the indorser, which was absolute.

The rule that parol evidence can not be admitted to contradict or change a written contract, is based on the soundest principles of public policy, and we regard a strict enforcement of this rule to bills of exchange and promissory notes, as very important to the commercial interests of the country.

In the case of *Mason* v. *Burton*, 54 Ill. 354, this court held, in an action by an indorsee against the indorser, and where the note was indorsed in blank, that the legal effect of the indorsement was, a written contract, which could not be impaired by parol proof of a verbal agreement, made at the same time of the indorsement, to the effect that the indorser should not be held responsible.

There are only a few classes of cases that form an exception to the rule stated. In a suit by the indorsee against the indorser, it might be shown that the indorsee held as an agent for the indorser, and, of course, could take no interest, and would have no right to maintain suit.

Or, it might be shown the note was indorsed for some special purpose, and is holden in trust, as, where a client would indorse to his attorney for collection merely.

Or, it might be shown that a note had been sold on a contract by which reliance was to be placed solely on the responsibility of the maker, and the indorsement was merely to transfer the title under the contract, and that an attempt to hold the indorser was a fraud.

These cases may be considered as an exception to the general rule; but the plea in this case does not fall within the principle of any of these excepted cases.

The case of *Scammon* v. *Adams*, 11 Ill. 576, cited by defendant, does not sustain his position. The question there was, in what character the indorsee held the note, whether as owner, or agent, or trustee. The case fairly falls within one of the exceptions named.

Neither is the case of *Van Buskirk* v. *Day*, 32 Ill. 260, cited by defendant, in point. The question there decided is, under a proper plea of fraud to a note, that parol proof was admissible to show that the note was procured through fraud and false representation.

The next point made by the defendant is, that the court erred in excluding from the consideration of the jury the evidence of Bangs and Jones.

This was proper. Bangs and Jones testified to representations made by Cushing. This evidence the court excluded, for the very good reason that the plaintiff was not in any manner bound by the declarations or statements Cushing might make. There is no evidence in the record that Cushing was the agent of the plaintiff, or had any authority to do or say anything for him.

The only remaining question raised by defendant is, that Josiah McRoberts, judge of the seventh judicial circuit, had no authority to preside as judge in the Superior Court of Cook county.

When the constitution of 1870 was submitted for adoption, the circuit court of Cook county had one judge, and the Superior Court of Chicago three judges. By the 23d section of article 6, of that instrument, it is declared that the former court shall consist of five judges; that the latter court shall be continued, and called the Superior Court of Cook county ; and it is provided that "the General Assembly may increase the number of said judges, by adding one to either of said courts for every additional 50,000 inhabitants in said county over and above a population of 400,000. The terms of office of the judges of said courts hereafter elected shall be six years."

By the 24th section of the same article, it is provided as follows: "Any judge of either of said courts shall have all the powers of a circuit judge, and may hold the court of which he is a member. Each of them may hold a different branch thereof at the same time." When all of these provisions

are considered together, it is apparent the intention of the framers of the constitution was, to give the several judges of these respective courts identically the same powers and place them precisely upon the same footing; and that it was not the intention to make these courts otherwise than circuit courts, but composed of branches corresponding with the number of judges, each judge, while holding such branch, having all the powers of a circuit court. The sitting of all or a majority of the judges of which the circuit court consists, as comprising the court and exercising its powers, was not contemplated, and, as we think, is not authorized by the constitution. If such had been intended, with the power given to the legislature to increase the number of judges according to population, surely it would have been provided that some certain number should constitute a quorum. In section 2 of the same article, creating the Supreme Court, and declaring that it shall consist of seven judges, it is provided, "one of said judges shall be chief justice; four shall constitute a quorum, and the concurrence of four shall be necessary to every decision." No such provision is contained in either of the sections relative to these courts in Cook county. As we have said, the intention is manifest that the organization of these two courts, and the powers of the judges, should be identically the same, the only difference being that there are two more judges in one than in the other. It follows, from these views, that the practice of having the *placita* show that these courts were respectively held by all the judges of which they consist, is improper, because each judge is but a circuit judge, and each branch of the court, as held by the different judges, are circuit courts, held in the name of the court of which the judge holding it is a member. The *placita* should show the court was held by one judge, and he be the one before whom the cause was heard, who should sign the bill of exceptions in actions at law, sign decrees and certify to the evidence in suits in equity. Had this course

been pursued, the record in this case would not have been in the confused condition it now is.

In the record filed, the *placita* shows the court was held by Wm. A. Porter, Joseph E. Gary and John A. Jameson, judges of the Superior Court. The bill of exceptions is signed by Joseph E. Gary. In the commencement of the bill of exceptions, it is stated that the case was heard before Josiah McRoberts, judge. Since the cause has been pending in this court, the defendant has procured an amendment to the record, from which it appears that Josiah McRoberts, judge of the seventh judicial circuit, actually presided, and the cause was tried before him.

It is insisted, by the attorney for the defendant, with much ability, that Judge McRoberts had no authority to preside as judge in the Superior Court of Cook county.

On the 3d day of May, 1873, the legislature passed an act, the first section of which reads as follows: " Whenever any judge or judges of any circuit court or the Superior Court of Cook county, shall request any judge or judges of any other court of record to come to the assistance of such judge or judges making such request, in the trial of causes, and in other matters pending in court, it shall be lawful for such judge or judges so requested to hold a branch or branches of the court to which he or they are so requested to come, with the same force and effect as if he was, or they were, the judge or judges of such court."

We are aware of no provision of our constitution that this section violates. The constitution requires each circuit judge to reside in the circuit in which he is elected; but he is not, either in terms or by implication, prohibited from holding court in another circuit, in such manner as may be provided by law.

The power of circuit judges to interchange circuits had long existed, and had never been questioned prior to the making of the constitution of 1870, and had the framers of that instrument intended to have prohibited one circuit judge

from holding court for another, it must be apparent to all a prohibitory clause would have been framed for that purpose.

The judges of the Superior Court being circuit judges, and the court in which they preside a circuit court, we are of opinion that Judge McRoberts might properly preside as judge in the Superior Court.

The validity of the second section of the act of May 3, 1873, is not before us, and upon which we express no opinion.

As no error is perceived in the record, the judgment will be affirmed.

*Judgment affirmed.*